UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

NEOGEN CORPORATION, a Michigan corporation,

    Plaintiff/Counter-Defendant,

v.

MICROBAC LABORATORIES, INC.,

    Defendant/Counter-Plaintiff.

Case No. 1:24-cv-00404

Hon. Jane M. Beckering

---

VARNUM LLP
Aaron M. Phelps (P64790)
Herman D. Hofman (P81297)
Gage M. Selvius (P85559)
Attorneys for Plaintiff/Counter-Defendant
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
amphelps@varnumlaw.com
hdhofman@varnumlaw.com
gmselvius@varnumlaw.com

BABST CALLAN CLEMENTS AND ZOMNIR, PC
Erin Lucas Hamilton (PA ID #93852)
Attorneys for Defendant/Counter-Plaintiff
Two Gateway Center, 6th Floor
Pittsburgh, PA 15222
(412) 394-5400
ehamilton@babstcalland.com

---

### PLAINTIFF/COUNTER-DEFENDANT NEOGEN CORPORATION'S ANSWER TO DEFENDANT COUNTER-PLAINTIFF'S FIRST AMENDED COUNTERCLAIMS GENERAL ALLEGATIONS AND COUNTS III AND IV

Plaintiff/Counter-Defendant, Neogen Corporation ("Neogen"), through their attorneys, Varnum LLP, respond to Defendant/Counter-Plaintiff Microbac Laboratories, Inc.'s ("Microbac") First Amended Counterclaim, General Allegations and Counts III and IV, as follows:

### GENERAL ALLEGATIONS

1.     Microbac is a privately owned Pennsylvania business corporation that provides full-service analytical laboratory testing for the food, environmental, and life sciences industries and is headquartered at 2009 MacKenzie Way, Suite 100, Cranberry Township, PA 16066-5338.

**ANSWER:** **Plaintiff/Counter-Defendant Neogen Corporation ("Neogen") lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph.**

2. In Microbac's food testing line of business, turnaround times are critical and quality standards must be met for public safety.

**ANSWER:** **Neogen lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph.**

3. Upon information and belief, Neogen is a Michigan Corporation that offers a suite of test kits and related products to the food, beverage, animal protein and agricultural industries to detect dangerous substances in food. *See* ECF No. 17 at ¶¶ 2 and 10.

**ANSWER:** **Admitted.**

4. On or about January 1, 2022, Microbac and 3M Company ("3M") entered a "3M Food Safety Pricing Agreement" (the "3M Agreement") for the purchase of various food safety testing products, as a continuation of the long-standing agreements Microbac had with 3M. ECF No. 13-1.

**ANSWER:** **Admitted that Defendant/Counter-Plaintiff Microbac Laboratories, Inc., ("Microbac") entered into agreements to purchase products from 3M and Neogen. The terms and conditions of the agreements speak for themselves, and any allegations inconsistent with those terms and conditions are denied as untrue.**

5. The 3M Agreement states that all product sales will be governed by the then-current 3M General Terms and Conditions of Sale for Products ("3M Terms") which could be found at https://www.3m.com/3M/en_US/company-us/general-terms-and-conditions. ECF No. 13-2. PageID.92. Microbac is without information sufficient to know if the terms and conditions

currently available on the referenced website governed during relevant time periods. However, upon information and belief, the 3M Terms included an express warranty that each product meets 3M's applicable production specifications and will be defect free at the time 3M ships each product.

**ANSWER:** **Admitted that Microbac entered into agreements to purchase products from 3M and Neogen, and that 3M's Terms and Conditions control and are binding on agreements between Microbac and 3M.  The 3M Terms and Conditions speak for themselves, and any allegations inconsistent with those Terms and Conditions are denied as untrue.  Neogen lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations regarding what Microbac knows.**

6. Upon information and belief, in September 2022, all or part of 3M's food safety division was acquired by Neogen.

**ANSWER:** **Admitted.**

7. The 3M Agreement states that neither Microbac nor 3M "may assign this Agreement, or any rights, or delegate any obligations hereunder, without the prior written consent of the other, not to be unreasonably withheld" except under certain inapplicable limited circumstances related to assignment between affiliates or an internal reorganization. ECF No. 131, PageID.93.

**ANSWER:** **The terms and conditions of the agreements between Microbac and 3M speak for themselves, and any allegations inconsistent with those terms and conditions are denied as untrue.  Further responding, denied that the exceptions in the "Assignment" provision between Microbac and 3M are "inapplicable" in this case.**

3

8. Microbac was not asked to provide written consent for 3M to assign the 3M Agreement to Neogen and Microbac did not provide such consent in writing or otherwise.

**ANSWER: Neogen lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph. Further responding, Microbac's consent was not required to effectuate the assignment of 3M's collection rights for certain 3M accounts receivable under its agreements with Microbac to Neogen.**

9. After the transaction between Neogen and 3M, Microbac placed orders for the same type of products from Neogen that it had formerly purchased from 3M.

**ANSWER: Admitted only that Microbac entered into agreements to purchase products from Neogen. The terms and conditions of the agreements speak for themselves, and any allegations inconsistent with those terms and conditions are denied as untrue.**

10. In its Amended Complaint, Neogen claims the Neogen Terms and Conditions of Sale apply to the sale of Neogen goods to Microbac which Microbac denies. *See e.g.,* ECF No. 17 at ¶ 16. However, the Neogen Terms and Conditions of Sale include an express warranty that products are free of defects and meet Neogen's applicable production specifications. ECF No. 11, PageID.11.

**ANSWER: Admitted that Neogen claims the Neogen Terms and Conditions of Sale apply to the sale of Neogen's products to Microbac. It is further admitted that the Neogen Terms and Conditions of Sale control and are binding on agreements between Microbac and Neogen. Any denial by Microbac that the Neogen Terms and Conditions of Sale control and are binding on agreements between Microbac and Neogen is denied as untrue. The terms and conditions of the agreements between Neogen and Microbac speak for themselves, and any allegations inconsistent with those terms and conditions are denied as untrue.**

11. Beginning in approximately October 2023, Microbac has experienced repetitive quality control failures and defective conditions associated with products purchased from Neogen. These defective and/or non-conforming products include some of the products Neogen now claims in its Amended Complaint were actually shipped by 3M pursuant to unknown servicing and/or transition agreements.

**ANSWER:** **Neogen denies the allegations in this paragraph as untrue.**

12. Specifically, the test kits Microbac purchased for use in its Molecular Detection Systems ("MDS") testing machines (i.e., food safety testing) frequently contained defective pellets, and Microbac also experienced quality issues with the petrifilm, both causing inaccurate and unreliable food safety test results.

**ANSWER:** **Neogen denies the allegations in this paragraph as untrue.**

    a. For example, one Microbac customer (Client A) continued to receive test results presumptively positive for listeria but confirmation tests indicated no listeria was actually present. Because the presumptive positive test results caused significant problems for the client (including delays in product release), Client A terminated its relationship with Microbac.

**ANSWER:** **Neogen lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph regarding the relationship between Microbac and its unnamed customer. The suggestion that any test results received by any client of Microbac were inaccurate due to defective pellets of quality issues with the petrifilm from Neogen is denied as untrue.**

      b.      Other Microbac customers ended their relationships with Microbac due to quality control failures associated with Neogen pellets and petrifilm, and Microbac was only able to win their business back after granting significant price concessions.

**ANSWER:** **Neogen lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph regarding the relationship between Microbac and its unnamed customers. The allegation that there were "quality control failures associated with Neogen pellets and petrifilm" is denied as untrue.**

13.      Microbac timely notified Neogen on numerous occasions about these quality control problems, but such problems have not been acknowledged, explained, addressed and/or remedied by Neogen. On the occasions Neogen sent Microbac replacement products in response to the defective products it sent Microbac, such replacement products were also defective.

**ANSWER:** **Neogen denies the allegations in this paragraph as untrue.**

14.      Neogen has and continues to refuse to provide Microbac with information regarding the reason, source or cause of the defective products.

**ANSWER:** **Neogen denies the allegations in this paragraph as untrue.**

15.      The impacts of these quality control failures caused Microbac to lose business, incur increased costs, sustain reputational damage and reduce the available working capital necessary to run its business.

**ANSWER:** **Neogen denies the allegations in this paragraph as untrue.**

16.      In addition to the above discussed quality failures, products purchased by Microbac from Neogen have not been delivered in a timely, correct and/or complete manner. Microbac's orders consistently have been delivered late, incomplete, containing the wrong

products and/or sent to the wrong location causing Microbac significant business disruptions, delays, employee time, product replacement costs and re-shipping costs.

**ANSWER:** **Neogen denies the allegations in this paragraph as untrue.**

17. Neogen consistently sent Microbac bills for product purchases that were inaccurate as to quantity and/or price. Additionally, Neogen sent approximately $200,000 in product invoices months late and after Microbac's financial year end. This failure by Neogen adversely affected Microbac's financial reporting and required Microbac's finance team to spend a significant amount of time reconciling the Neogen invoices with minimal to no support from Neogen.

**ANSWER:** **Neogen denies the allegations in this paragraph as untrue.**

18. The quality control issues with Neogen's products caused Microbac damage to its customer relationships, reputation and business operations. Due to Neogen's failure to even recognize, let alone remedy, the quality problems with its products, Microbac was forced to transition from MDS units to BioRad machines and equipment in order to eliminate Microbac's need for Neogen products moving forward. This transition process was hugely disruptive and expensive to Microbac requiring large amounts of employee time and over-time to effectuate (including but not limited to the need to prepare a new verification matrix, perform training on new equipment and obtaining customer consent and participation).

**ANSWER:** **Neogen denies the allegations in this paragraph as untrue.**

19. On or about March 8, 2024, Microbac commenced suit against Neogen by filing a Praecipe for Writ of Summons against Neogen in the Pennsylvania Allegeheny County Court of Common Pleas at GD 24-002807 (the "Pennsylvania Action") which was served on Neogen on March 18, 2024. However, before Microbac filed its Complaint in the Pennsylvania Action, Neogen commenced the present action.

**ANSWER:** **Neogen lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Microbac's alleged suit against Neogen in Pennsylvania Allegeheny County Court of Common Pleas. Neogen admits that it commenced the present action prior to the filing of any Complaint by Microbac.**

### COUNT III – BREACH OF CONTRACT

36.     Microbac realleges and incorporates by reference the allegations contained within Paragraphs 1-35 of the Counterclaim section above.

**ANSWER:**     **Neogen incorporates its answers to the preceding allegations by reference.**

37.     From approximately October 2023 through February 2024, Microbac has placed with Neogen numerous orders for food testing supplies requesting specific products, meeting certain specifications, to be delivered to specific locations in exchange for monetary payment.

**ANSWER:**     **Admitted that Microbac entered into agreements to purchase products from Neogen.  The terms and conditions of the agreements speak for themselves, and any allegations inconsistent with those terms and conditions are denied as untrue.**

38.     Neogen breached such food testing product purchase contracts by delivering incorrect products that Microbac did not order instead of the products it did order, delivering products late or to the wrong location, delivering products incomplete and/or delivering defective products. Neogen also consistently sent Microbac bills for product purchases that were late and/or inaccurate as to quantity and/or price.

**ANSWER:**     **Neogen denies the allegations in this paragraph as untrue.**

39.     Such breaches caused Microbac significant business disruptions, delays, employee time, product replacement costs and re-shipping costs in amounts to be proven at trial.

**ANSWER:**    **Neogen denies the allegations in this paragraph as untrue.**

WHEREFORE, Neogen respectfully requests that this Court grant a Judgment in its favor and against Microbac, and hold that Microbac's Counterclaims state no cause of action, and award to Neogen all proper relief this Court deems just and proper, including all costs, interest, and attorney's fees associated prosecuting this action and defending against Microbac's Counterclaims.

### COUNT IV – BREACH OF EXPRESS WARRANTY (IN THE ALTERNATIVE)

40. Microbac realleges and incorporates by reference the allegations contained within Paragraphs 1-39 of the Counterclaim section above.

**ANSWER:**    **Neogen incorporates its answers to the preceding allegations by reference.**

41. Upon information and belief, the 3M Terms and Conditions of Sale and the Neogen Terms and Conditions of Sale both contain express warranties that products are free of defects and meet applicable production specifications.

**ANSWER:**    **Admitted that Microbac entered into agreements to purchase products from 3M and Neogen, and that 3M's and Neogen's respective Terms and Conditions control and are binding on Microbac. The Terms and Conditions speak for themselves, and any allegations inconsistent with the Terms and Conditions are denied as untrue.**

42. To the extent it is legally or judicially determined that the Neogen Terms and Conditions of Sale and/or the 3M Terms and Conditions of Sale apply to any of portion of the orders serving as the basis of Microbac's Counterclaims – despite Microbac's denial that such Terms and Conditions apply, such express warranties would be implicated.

**ANSWER:**    **Admitted that Microbac entered into agreements to purchase products from 3M and Neogen, and that 3M's and Neogen's respective Terms and Conditions control and**

**are binding on Microbac.  The Terms and Conditions speak for themselves, and any allegations inconsistent with the Terms and Conditions are denied as untrue.**

43. To the extent the Neogen Terms and Conditions of Sale and/or the 3M Terms and Conditions of Sale apply to any portion of Micorbac's [sic] orders, Microbac would have relied on the express warranties contained therein to ensure accuracy in their food testing line of business. Such express warranties would be part of the basis for the bargain between Microbac and Neogen as Microbac expected the products Neogen delivered would not be defective.

**ANSWER:   Admitted that Microbac entered into agreements to purchase products from 3M and Neogen, and that 3M's and Neogen's respective Terms and Conditions control and are binding on Microbac.  It is further admitted that 3M's and Neogen's respective Terms and Conditions were relied upon by the Parties and were part of the bases for the bargains between the Parties.  The Terms and Conditions speak for themselves, and any allegations inconsistent with the Terms and Conditions are denied as untrue.**

44. Beginning in approximately October 2023, Microbac has experienced repetitive quality control failures and defective conditions associated with products purchased from Neogen specifically including pellets in test kits and petrifilm.

**ANSWER:   Neogen denies the allegations in this paragraph as untrue.**

45. Such quality control failures and defective conditions are safety related since the affected products were being utilized in food safety testing.

**ANSWER:   Neogen denies the allegations in this paragraph as untrue**

46. Microbac repeatedly gave Neogen notice of the quality control failures and defective conditions associated with its products, but Neogen has not acknowledged, addressed and/or remedied such product failures. On the occasions Neogen provided replacement products

for the defective goods it shipped to Microbac, those replacement goods were likewise defective. Any limited remedies Neogen claims apply in any alleged applicable terms and conditions are unenforceable and/or void.

**ANSWER:** **Neogen denies the various allegations in this paragraph as untrue.**

    47.    As a result of the quality control failures and defective conditions associated with products purchased from Neogen specifically including pellets in test kits and petrifilm, Microbac has experienced damages including but not limited to:

    a.    Lost profits associated with Client A approximated to be $77,000 annually;

    b.    Lost profits from customers lost but regained with costs concessions approximated to be $300,000 annually;

    c.    Lost profits from customer volume decreases approximated to be $170,000 annually;

    d.    Cost of capital associated with lost accounts receivable approximated to be $32,000 annually;

    e.    Costs to run side-by-side methods for clients as part of transition to new methods/products approximated to be $27,000;

    f.    Overtime from hourly employees and salaried employees in the 10/23-2/24 timeframe due to Neogen product problems approximated to be $86,011;

    g.    Overtime from hourly employees and salaried employees related to the switch to BioRad approximated to be $43,425;

    h.    Reputational damages; and

        i.      Procurement of Neogen products from alternative suppliers (e.g., Nelson Jameson and WorldBioProducts) which resulted in increased costs of lab supplies approximated to be $159,202.

**ANSWER:** Neogen denies the allegations in this paragraph as untrue.

WHEREFORE, Neogen respectfully requests that this Court grant a Judgment in its favor and against Microbac, and hold that Microbac's Counterclaims state no cause of action, and award to Neogen all proper relief this Court deems just and proper, including all costs, interest, and attorney's fees associated with prosecuting this action and defending against Microbac's counterclaims.

Respectfully submitted,

**VARNUM LLP**
Attorneys for Plaintiff/Counter-Defendant

Dated: November 15, 2024

By:   /s/ *Herman D. Hofman*
Aaron M. Phelps (P64790)
Herman D. Hofman (P81297)
Gage M. Selvius (P85559)
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
amphelps@varnumlaw.com
hdhofman@varnumlaw.com
gmselvius@varnumlaw.com

## AFFIRMATIVE AND OTHER DEFENSES

Plaintiff/Counter-Defendant, Neogen Corporation ("Neogen"), through their attorneys, Varnum LLP, states the following as its affirmative and other defenses to Defendant/Counter-Plaintiff's ("Microbac") Counterclaims:

1.    All or part of Microbac's Counterclaims are barred by the terms of the agreements between the Parties and by the applicable Terms and Conditions.

2. Neogen has not violated the agreements between the Parties.

3. The relief sought by Microbac is barred by the applicable Terms and Conditions and/or other terms of the contracts between the parties.

4. All or part of the damages sought by Microbac may not be recoverable under the applicable law.

5. All or part of Microbac's Counterclaims may be barred by Neogen's right to recoupment or setoff.

6. Microbac's alleged damages were caused, in whole or in part, by its own acts or omissions or parties other than Neogen.

7. Microbac's Counterclaims may be barred in whole or in part by the statute of limitations.

8. Microbac's Counterclaims fail to state a claim upon which relief can be granted.

9. Neogen asserts that Microbac is barred from obtaining the relief sought in the Counterclaims by the doctrines of consent, estoppel, waiver, unclean hands, laches or other equitable doctrines.

10. Neogen asserts, without admitting any liability whatsoever, that Microbac's Counterclaims are barred in whole or in part by Microbac's failure to mitigate.

11. Any damages sustained by Microbac, which Neogen denies exist, were not proximately caused by any act or omission of Neogen.

12. Neogen's alleged conduct was excused and/or justified.

13. Neogen at all times acted in good faith.

14. Microbac may have failed to name and/or join a necessary party or necessary parties.

15. If Microbac suffered or sustained any loss, injury, damages or detriment, it was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, or intentional misconduct of Microbac or third parties, and not by Neogen.

16. Neogen reserves the right to add to or amend this list of defenses up to and including the time of trial.

                                                    Respectfully submitted,

                                                    **VARNUM LLP**
Attorneys for Plaintiff/Counter-Defendant

Dated: November 15, 2024                By:   */s/ Herman D. Hofman*
                                                      Aaron M. Phelps (P64790)
                                                      Herman D. Hofman (P81297)
                                                      Gage M. Selvius (P85559)
                                                      Bridgewater Place, P.O. Box 352
                                                      Grand Rapids, MI 49501-0352
                                                      (616) 336-6000
                                                      amphelps@varnumlaw.com
                                                      hdhofman@varnumlaw.com
                                                      gmselvius@varnumlaw.com

26477818.1